IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE REJUVI LABORATORY, INC.,
Debtor

REJUVI LABORATORY, INC.,
    Appellant,
    v.
MARIA CORSO,
    Appellee.

Case No. 20-cv-05541-MMC

Bankruptcy Case No. 18-31069-DM

**DECISION REVERSING ORDER OF BANKRUPTCY COURT; REMANDING FOR FURTHER PROCEEDINGS**

Before the Court is appellant Rejuvi Laboratory, Inc.'s ("Rejuvi") appeal from: (1) "Memorandum Decision Regarding Jurisdiction of the Australian Court and Denying Motion to Amend Claim," issued December 9, 2019, by the United States Bankruptcy Court ("Bankruptcy Court") and (2) the Bankruptcy Court's "Order Confirming Jurisdiction of the Australian Court and Denying Motion to Amend Claim," also issued December 9, 2019, as modified by its "Order Granting Rejuvi's Motion to Reconsider (ECF 261) and Amending Order on Objection to Claim (ECF 257)," issued July 25, 2020. Appellee Maria Corso ("Corso") has filed opposition, to which Rejuvi has replied. Having read and considered the parties' respective briefs and the record on appeal, the Court rules as follows.

//

**BACKGROUND**

Rejuvi is a California corporation that "researches, develops, and produces a wide variety of cosmetic products" including tattoo removal products, and sells its products internationally, "primarily through a network of distributors." (See Doc. No. 8-12 (Decl. of Wei "Wade" Cheng in Support of Rejuvi's Brief re Jurisdiction of Australian Court ("Cheng Decl.")) ¶¶ 4, 12.) Pursuant to "Exclusive Distribution Agreement[s]," Rejuvi granted to Arias Holdings Pty. Ltd. ("Arias"), a Queensland company, "sole distributorship for Australia." (See id. Exs. A, B, C.) Corso is a resident of the state of South Australia. On September 27, 2007, she visited the Platinum Beauty Clinic in Adelaide, at which Michelle Babich ("Babich") applied Rejuvi's tattoo removal product to Corso's back and right ankle, causing, as described by Corso, "severe adverse reactions and multiple injuries." (See Doc. No. 8-14 (Decl. of Maria Corso in Support of Opp. to Rejuvi's Brief re Personal Jurisdiction of Australian Court ("Corso Decl.")) ¶ 10.)

Corso subsequently filed, in the District Court of South Australia ("South Australia Court"), a lawsuit in which she asserted, as against Rejuvi, a claim of negligence, after which Rejuvi was served with the operative Statement of Claim. After Rejuvi failed to respond to the Statement of Claim or otherwise appear, the South Australia Court, on June 17, 2016, entered judgment against it in the amount of AU$1,020,508.55 and Rejuvi, on June 9, 2017, filed an application to set aside the judgment, which application was denied by the South Australia Court.

On September 27, 2018, Rejuvi filed a petition for bankruptcy in the Bankruptcy Court, after which Corso filed a proof of claim in the amount of $1,242,240.00, stating, as the basis for her claim, "Personal Injury, Judgment in Australia." (See Doc. No. 8-4 (Proof of Claim, filed Jan. 9, 2019) ¶ 8.) Rejuvi thereafter filed an Objection, by which it sought disallowance of Corso's claim, on the grounds that the South Australia Court did not have personal jurisdiction over it and that the South Australia Court was a seriously inconvenient forum. After a hearing on the matter, the Bankruptcy Court, on December 9, 2019, issued its Order Confirming Jurisdiction, finding the South Australia Court had

personal jurisdiction over Rejuvi, and, on July 25, 2020, issued its final Order, allowing Corso's claim in the amount of $1,118,958.80.

## LEGAL STANDARD

A final order of a bankruptcy court is appealable to the district court. See 28 U.S.C. § 158(a)(1). In reviewing a final order of a bankruptcy court, a district court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo. See In re Gebhart, 621 F.3d 1206, 1209 (9th Cir. 2010).

## DISCUSSION

By the instant appeal, Rejuvi raises the following two issues: (1) "[w]hether the Bankruptcy Court erred in its determination that the District Court of South Australia had personal jurisdiction over Rejuvi" and (2) "[w]hether the Bankruptcy Court erred by not finding that the District Court of South Australia presented a seriously inconvenient forum to Rejuvi." (See Opening App. Br. at 1.) Rejuvi contends the answer to both questions is "yes," and, consequently, under the Uniform Foreign-Country Money Judgments Recognition Act ("Uniform Act"), Cal. Civ. Proc. Code § 1713 et seq., recognition of the judgment entered by the South Australia Court is precluded. The Court first considers the question of personal jurisdiction.

### A.    Preclusion from Raising Challenge to Personal Jurisdiction

As a preliminary matter, Corso, citing the Uniform Act, argues Rejuvi is precluded from challenging personal jurisdiction because it voluntarily appeared in the South Australia Court when it filed an application to set aside the default judgment.

The Uniform Act provides, in relevant part, that "[a] foreign-country judgment shall not be refused recognition for lack of personal jurisdiction . . . if . . . [t]he defendant voluntarily appeared in the proceeding, other than for the purpose of . . . contesting the jurisdiction of the court over the defendant." See Cal. Civ. Proc. Code § 1717(b)(2). Here, Corso contends, Rejuvi, in filing its application to set aside the default judgment, "did not object to the Australian Court's jurisdiction" but, rather, "sought to set aside the judgment so it could present merits defenses." (See Response at 13:14-16.)

3

As Rejuvi points out, however, the sole means available to a party for the purpose of setting aside a default judgment entered by the South Australia Court is an application under Rule 41L of that court's Civil Rules, which rule requires the applicant to show not only that it "did not have knowledge of the initiating process in sufficient time to defend the proceedings" but also that it "has a prima facie defence to the proceedings on the merits."  See District Court Civil Rules 2006 (SA) r 41L (Austl.).  In light thereof, Rejuvi based its application on both a lack of service and a listing of potential defenses on the merits.  (See Doc. No. 8-14 (Decl. of Wei Cheng in Support of Application to Set Aside Judgment).)

Given such a rule, the circumstances presented by the instant case are distinguishable from those addressed in the cases on which Corso relies.  Of course, if Rejuvi's application had been granted and Rejuvi had then relied on more than its jurisdictional challenge, it would have been, as Corso argues, precluded from raising that challenge here.  See, e.g., CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V., 100 N.Y.2d 215, 225 (2003) (finding defendants precluded from challenging jurisdiction under Uniform Act where they applied to set aside default judgments "by arguing the merits of [their] claims"); S.C. Chimexim S.A. v. Velco Enterprises Ltd., 36 F. Supp. 2d 206, 215 (S.D.N.Y. 1999) (finding defendant precluded from challenging jurisdiction under Uniform Act where it appealed default judgment based on multiple arguments including merits of underlying dispute); Nippon Emo-Trans Co. v. Emo-Trans, Inc., 744 F. Supp. 1215, 1226 (E.D.N.Y. 1990) (finding defendant precluded from challenging jurisdiction under Uniform Act, where defendant, after losing jurisdictional objection, proceeded to defend on merits).  As noted above, however, Rejuvi's application was denied, and, although one might speculate as to what Rejuvi would have done had such ruling been otherwise, the record before this Court ends at the denial.

Accordingly, the Court finds Rejuvi may proceed with its challenge to personal jurisdiction.

//

4

**B.     Challenge to Personal Jurisdiction**

As set forth in the Uniform Act, "a court of this state shall not recognize a foreign-country judgment if . . . [t]he foreign court did not have personal jurisdiction over the defendant." See Cal. Civ. Proc. Code § 1716(b)(2).  As further set forth therein, a foreign court lacks personal jurisdiction over a defendant if either of the following conditions is met: (1) "[t]he foreign court lacks a basis for exercising personal jurisdiction that would be sufficient according to the standards governing personal jurisdiction in this state" or (2) "[t]he foreign court lacks personal jurisdiction under its own law."  See id. § 1717(a)(1)-(2).  In the instant case, Rejuvi relies solely on the first of these two grounds, and, as the "party resisting recognition of [the] foreign-country judgment[,] has the burden of establishing that . . . ground."  See id. § 1716(e).  The Court next turns to the requirements for personal jurisdiction under California law.

"Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same."  See Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800-01 (9th Cir. 2004).  "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least minimum contacts with the relevant forum," see id. at 801 (internal quotation and citation omitted), and, "[u]nless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes, a forum may exercise only 'specific' jurisdiction—that is, jurisdiction based on the relationship between the defendant's forum contacts and the plaintiff's claim," see Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).  In the instant case, Corso relies solely on specific jurisdiction.

For purposes of analyzing a claim of specific jurisdiction, the Ninth Circuit has established a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or

perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

See Schwarzenegger, 374 F.3d at 802. The first prong "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." See Yahoo! Inc., 433 F.3d at 1206. Consequently, in determining whether the requisite showing has been made, the Court first turns to the question of the relevant forum.

Australia, like the United States, is a federation wherein each state has its own judicial system. See AUSTRALIAN GOVERNMENT, HOW GOVERNMENT WORKS, https://info.australia.gov.au/about-government/how-government-works.[1] Here, as noted, Corso commenced proceedings in the South Australia Court, which "is the principal [state] trial court in South Australia." See COURTS ADMINISTRATION AUTHORITY OF SOUTH AUSTRALIA, DISTRICT COURT, http://www.courts.sa.gov.au/OurCourts/DistrictCourt. Consequently, the relevant forum is South Australia. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985) (holding "the constitutional touchstone [is] whether the defendant purposefully established minimum contacts in the forum State"; assessing out-of-state defendant's contacts with Florida) (internal quotation and citation omitted); see also Bank of Montreal v. Kough, 612 F.2d 467, 471 (9th Cir. 1980) (looking to defendant's contacts with British Columbia in determining, under Uniform Act, whether assertion of jurisdiction over defendant by Supreme Court of British Columbia was consistent with American due process standards). The Court next considers whether Rejuvi has either purposefully availed itself of the privilege of doing business in South Australia or has purposefully directed its activities at South Australia.

---

[1] The six states comprising Australia are New South Wales, Queensland, South Australia, Tasmania, Victoria, and Western Australia. See id.

In that regard, Corso relies on the following undisputed evidence submitted to the Bankruptcy Court. Rejuvi, as noted, contracted with an independent Queensland distributor, namely, Arias, to sell Rejuvi's cosmetic products in Australia. (See Doc. No. 8-12 (Cheng Decl.) ¶ 13.) Pursuant to one of the above-referenced distribution agreements, Rejuvi's president, Wei "Wade" Cheng ("Cheng"), "visited Australia twice to provide seminars related to Rejuvi products." (See id. ¶ 23; Ex. A.)[2] Babich, the individual who applied the Rejuvi product to Corso's back and ankle, provided Corso with a "Rejuvi flyer" in advance of that procedure. (See Doc. No. 8-14 (Corso Decl.) ¶ 6.)

As the undisputed evidence submitted by Rejuvi shows, however, Rejuvi did not retain any control over how Arias distributed Rejuvi's products or promotional materials. (See Doc. No. 8-12 (Cheng Decl.) Exs. A, B, C.) That evidence also shows Rejuvi "did not control or organize the seminars in Australia," the attendees were "recruited" by Arias,[3] and Rejuvi "was not privy to the details." (See id. ¶ 24.)[4] Further, the only times any Rejuvi personnel visited Australia for business were the two trips Cheng made to provide seminars, none of which were conducted in South Australia. (See id. ¶ 23.)

Given the above factual record, the Court, as set forth below, finds Rejuvi has met its burden of demonstrating the South Australia Court lacked a basis for exercising personal jurisdiction over it.

---

[2] To the extent Corso, by stating Rejuvi provided "training" to Babich, and/or intended to describe something more than the above-referenced seminars, Rejuvi's objection on hearsay grounds is hereby SUSTAINED. (See Doc. No. 8-14 (Corso Decl.) ¶ 5 (stating "Babich told me that she . . . had received training in Sydney on how to use the Rejuvi Product from Dr. Cheng").) Moreover, Rejuvi has submitted the contract by which Arias appointed the Australian Institute of Permanent Makeup as Arias's "Exclusive trainer to train prospective users in the technique of Tattoo removal." (See Doc. No. 8-12 (Cheng Decl.) Ex. D.)

[3] Although Corso argues Arias "was acting on behalf of Rejuvi when it recruited clinicians" to attend the above-referenced seminars (see Response at 22:20-21), the record is devoid of any such evidence.

[4] Cf. CollegeSource, Inc. v. AcademyOne, Inc., 653 F.3d 1066, 1078 (9th Cir. 2011) (finding personal jurisdiction where defendant "hired the contractor" that "performed the relevant work on [defendant's] behalf" and "gave it specific instructions" on how to perform that work).

In J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873 (2011), the Supreme Court, in a case presenting facts strikingly similar to those here, found, in a plurality opinion, those facts insufficient to support the exercise of personal jurisdiction. In particular, a products-liability suit was brought in a New Jersey state court against an English manufacturer of a metal-shearing machine that seriously injured a worker in New Jersey. The manufacturer had engaged an independent distributor to sell its machines in the United States, its officials had attended trade shows in the United States but not in New Jersey, and up to four machines ended up in New Jersey. See id. at 886 (plurality op. of Kennedy, J.). Noting it was the defendant's "purposeful contacts with New Jersey, not with the United States, that alone [were] relevant," the plurality found the above facts "may reveal an intent to serve the U.S. market, but they do not show that [the manufacturer] purposefully availed itself of the New Jersey market," see id., a conclusion joined by two other justices, see id. at 887-88 (Breyer, J., concurring).

Consistent with the above-referenced plurality opinion, the Ninth Circuit has held "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state." See Holland Am. Line, Inc., v. Wartsila N. Am., Inc., 485 F.3d 450, 459 (9th Cir. 2007) (finding marketing representative's visits and product training in the United States but not forum state insufficient to show purposeful availment; further finding "print advertisements that incidentally may have made their way" to forum state likewise insufficient);[5] Walsh v. LG Chem Ltd., 2020 WL 6391100, at *1 (9th Cir. Nov. 2, 2020) (holding "defendant's placement of a product into the stream of commerce is insufficient to support personal jurisdiction absent additional conduct specifically directed at the forum state").

---

[5] Contrary to Corso's argument, the "effects" test set forth in Calder v. Jones, 465 U.S. 783 (1984), is not applicable here. See Holland Am. Line, Inc., 485 F.3d at 459-60 (holding "[e]ven a defendant's awareness that the stream of commerce may or will sweep the product into the forum state does not convert the mere act of placing the product into the stream of commerce into an act purposefully directed toward the forum state"; declining to apply Calder "because it is well established that the Calder test applies only to intentional torts, not to . . . negligence claims").

8

In sum, although Rejuvi directed its activities at Australia, it did not purposefully avail itself of the privilege of doing business in, or purposefully direct its activities at, South Australia, and, consequently, Rejuvi was not subject to personal jurisdiction in the South Australia Court.[6]

## CONCLUSION

For the reasons set forth above, the order of the Bankruptcy Court allowing Corso's claim is hereby REVERSED and the action is hereby REMANDED to the Bankruptcy Court for further proceedings consistent herewith.

**IT IS SO ORDERED.**

Dated: March 3, 2021

MAXINE M. CHESNEY
United States District Judge

---

[6] In light of this finding, the Court does not address herein the question of whether the Bankruptcy Court erred by not finding the South Australia Court presented a seriously inconvenient forum.